IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

Laura J. Starcher,

    Plaintiff,

v.

    Case No. 2:07cv238

    Judge Michael H. Watson

Michael J. Astrue,
Commissioner of Social Security,

    Defendant.

### OPINION AND ORDER

This matter is before the Court on Plaintiff Laura J. Starcher's (hereinafter "Plaintiff") Objections (Doc. 13) to the March 6, 2008 Report and Recommendation of Magistrate Judge Terence P. Kemp (hereinafter "Report") (Doc. 12). Plaintiff filed a Supplemental Memorandum in Support of Objections on March 21, 2008. (Doc. 14.)

This matter is now ripe for review. For the reasons set forth below, Plaintiff's Objections are hereby **DENIED** and the Magistrate Judge's Report is hereby **ADOPTED**.

I.    FACTS

On September 2, 2003, Plaintiff applied for disability benefits, pursuant to Title II of the Social Security Act, 42 U.S.C. §§ 216(I) and 223, alleging disability dating from November 13, 2002. In particular, Plaintiff maintains that she is unable to engage in any substantial gainful activity due to musculoskeletal impairments affecting the spine,

hypertension, asthma, depression, and obesity. Her claim was denied by the Social Security Administration on December 22, 2003.

### A. Hearing Before the Administrative Law Judge

On March 13, 2006, an Administrative Law Judge (hereinafter "ALJ") held a hearing to review Plaintiff's claim. The following evidence and testimony was presented at the hearing.

#### 1. Relevant Medical History

Plaintiff has a history of sleep apnea, depression, lower back pain, obesity, hypertension and asthma. She testified that her height is 5'3" and her weight is 420 pounds. In regards to her conditions, Plaintiff testified that her sleep apnea has improved and the CPAP machine is unnecessary. Her depression also improved while she was taking Lexapro. Plaintiff currently self-medicates with Tylenol to relieve back pain, and her asthma is under control.

In October 2003, Dr. Hayes, Plaintiff's treating physician, indicated that Plaintiff had:

1. Hypertension, which is well controlled with medication,
2. Bronchial asthma, and
3. Gross obesity with secondary complications, *i.e.*, chronic back pain, fatigue, and exacerbation of her respiratory status.

Dr. Hayes and Plaintiff also discussed the need for bariatric surgery due to her obesity. On May 8, 2003, Dr. Hayes prepared a short letter stating that Plaintiff was unable to get a job due to her back and weight problems.

Dr. Lawson, Plaintiff's treating chiropractor, diagnosed Plaintiff with permanent soft tissue damage in the lumbar area, which limits long periods of sitting or standing. X-

rays also depicted moderate degenerative changes in Plaintiff's lower back. As such, Dr. Lawson advised against prolonged periods of bending or twisting.

On October 27, 2003, Dr. Gilliam examined Plaintiff. He documented some limitation of motion of the lumbar spine. At the time, Plaintiff walked with a wide based gait and without ambulatory aids. Her complaints included life-long obesity, asthma, and ten years of lower back pain. Dr. Gilliam reported that Plaintiff could sit and stand at will but had difficulty walking. Occasionally, she could lift between five and fifteen pounds. She had no difficulty handling objects.

On November 10, 2003, Dr. Sunbury performed a psychological exam on Plaintiff. Plaintiff had several crying spells during the session. Dr. Sunbury diagnosed her with an adjustment disorder with depressed mood. Plaintiff informed Dr. Sunbury that she feared that she was not being hired for the jobs she interviewed for because "maybe they look at my size." Dr. Sunbury concluded that Plaintiff could mentally withstand the stress and pressures associated with day to day work activity. Dr. Malinsky reviewed this report and found no severe mental impairment.

Dr. Neiger performed a residual functional capacity assessment on October 13, 2003. The assessment indicated that Plaintiff could sit without difficulty but could only walk for short periods of time. In an eight hour day, Dr. Neiger assessed that Plaintiff could stand or walk for about two hours and could sit for about six hours. Plaintiff's ability to push or pull was not affected, and she could occasionally lift ten pounds. She has decreased range of motion in her back, hips and knees. The assessment also found mild cardiomegaly. Plaintiff's weight exacerbated all of these conditions. Since Plaintiff has asthma, it was recommended that she should work in an environment

where she could avoid exposure to extreme cold, fumes, odors, dusts, gases and poor ventilation.

On December 12, 2003, Plaintiff underwent a pulmonary function study which showed that she had obstructive and restrictive pulmonary defects.

### 2. Testimony at the Hearing

Plaintiff gave the following testimony. Plaintiff is a high school graduate who completed some college coursework. Her past relevant work experience includes working as a billing clerk and a customer service representative. In November of 2002, she was laid off from her customer service job of tens years with Verizon North. She received unemployment compensation for a period of time thereafter. Plaintiff testified that she would have continued working had she not been laid off. Subsequent to being terminated, Plaintiff went on several job interviews. Notwithstanding the foregoing, Plaintiff testified that she became disabled the day her employment was terminated in November of 2002.

Plaintiff claims that the combination of her impairments leaves her unable to work and entitles her to disability compensation. Plaintiff contends that her disability derives from a combination of weight, back pain, asthma, diabetes, hypertension, and depression. However, the hypertension, diabetes, depression, and asthma are controlled with medication. Plaintiff gained one hundred pounds since losing her customer service job. The increased back pain leaves her unable to work. One a scale of one to ten, she estimated that her daily pain was an eight out of ten, but was able to be decreased to a six with Tylenol. Plaintiff never attempted anything stronger than Tylenol for fear of addiction.

Plaintiff stated that she is able to engage in the following activities:

- driving twice a month for a limited distance,
- grocery shopping with a motorized cart,
- camping - utilizing a ramp on the camper,
- doing the dishes while seated,
- cooking while seated,
- very little walking,
- going to church every Sunday, and
- dressing and caring for herself, however, requiring assistance with her shoes and socks.

Plaintiff spends the majority of her time working on puzzles, reading books, watching television and visiting with friends.

Plaintiff stated that she has no mental problems which impede her from concentrating on a task. If her back pain could be lessened, she would be willing to return to work. Plaintiff also has trouble standing for more than a few minutes at a time and is unable to walk more than a block. Her treating physician recommended that she use a cane, but she is too embarrassed to do so. The ALJ noted that Plaintiff was not using a cane at the hearing and appeared to have no ambulatory problems.

Mr. Woods, a vocational expert, testified based on a hypothetical limitation of standing or walking for two hours and sitting for six hours, that Plaintiff could perform her past work in addition to a variety of other jobs which would accommodate her limitations. Mr. Woods considered Plaintiff's walking and lifting limitations, age, education level and past work experience. The jobs listed by Mr. Woods did not include any which required the use of ladders, kneeling, crawling, or crouching, and included only a limited amount of stairs. Work environments which had the potential to exacerbate an asthmatic condition were also eliminated from his analysis. Finally, Mr. Woods incorporated a less than full range of sedentary work in his analysis.

## B. Decision of the ALJ and Subsequent Procedural History

On August 21, 2006, the ALJ denied disability benefits to Plaintiff finding that:

1. [Plaintiff] met the disability insured status requirements of the Act on the alleged onset of disability of November 13, 2002 and continues to meet those requirements through the date of this decision.

2. [Plaintiff] has not engaged in substantial gainful activity since the onset of disability.

3. [Plaintiff] has severe impairments including hypertension, spinal disorders, asthma and a sleep apnea disorder. These impairments do not singly or in combination meet or equal any section of the Listing of Impairments.

4. [Plaintiff's] testimony was generally credible but did not warrant any additional narrowing of her residual functional capacity.

5. [Plaintiff] has the residual functional capacity to perform less than a full range of sedentary work.

6. [Plaintiff] is a younger individual with a high school education.

7. [Plaintiff] has no transferable work skills.

8. Assuming that [Plaintiff] could perform a full range of sedentary work, Vocational Rules 201.21 or 201.22 would direct that she be found not disabled. Her additional limitations have not significantly narrowed her occupational base and thus, a finding of not disabled can be made within the framework of the above-cited rules.

9. [Plaintiff] was not under a disability at any time relevant to this decision.

The Appeals Council denied Plaintiff's request for review of the ALJ's decision on January 25, 2007. As a result, the ALJ's decision became the Commissioner's final decision.

On March 27, 2007, Plaintiff timely filed this action. Magistrate Judge Kemp reviewed the record and recommends affirming the final decision of the Commissioner

denying Plaintiff's application for disability insurance benefits. Plaintiff timely filed Objections to the Report.

## II. ANALYSIS

### A. Standard of Review

This Court has jurisdiction to review the Commissioner's decision pursuant to 42 U.S.C. § 405(g). The standard of review is whether the Commissioner's findings are supported by substantial evidence and the proper legal standard was followed. *Brainard v. Sec. of Health and Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989); *Richardson v. Perales*, 402 U.S. 389, 401 (1971). Substantial evidence requires more than a scintilla of evidence but less than a preponderance. *Brainard*, 889 F.2d at 681; *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938). The Commissioner's decision must be given deference and affirmed if substantial evidence supports that conclusion. The Commissioner's "zone of choice" should not be interfered with by the courts, even if there is substantial evidence that could have decided the case in the opposite direction. *Mullen v. Brown*, 800 F.2d 535, 545 (6th Cir. 1986). The record as a whole must be examined in determining the substantiality of the evidence in support of the Secretary's decision. *Hephner v. Mathews*, 574 F. 2d 359, 362 (6th Cir. 1978).

### B. Plaintiff's Objections

#### 1. Obesity

Plaintiff contends that the failure of the ALJ to characterize obesity as a severe impairment constitutes more than harmless error. First, Plaintiff argues that the omission of obesity indicates a hesitancy by the ALJ in recognizing obesity as a severe impairment,

which effected the weight accorded to the opinion of Dr. Hayes, the treating physician. In support, Plaintiff relies on *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234 (6th Cir. 2007).

In *Rogers*, the plaintiff was diagnosed by her treating physicians as having rheumatoid arthritis and fibromyalgia. The treating physicians found plaintiff disabled and unable to work. An agency doctor examined the plaintiff and stated that she would be unable to maintain full-time employment. The Social Security Administration assigned another doctor to review the record. This non-examining physician disagreed with the fibromyalgia diagnosis and recommended against awarding disability benefits. A second non-examining physician concurred with the non-examining physician against awarding benefits. The ALJ gave no explanation for giving greater weight to the opinion of the non-examining, non-treating physicians than the opinion of the treating physicians, recognized as experts in the field. Further, the opinion of the assigned agency doctor who examined the plaintiff was also disregarded without explanation. The *Rogers* court held that in order to disregard the opinion of a treating physician, a "good reason" must be provided. *Id.* at 242.

The Court concludes that the holding of *Rogers* is not applicable to this case. First, the agency doctors' diagnoses do not differ from those of the treating physicians'. Second, the ALJ noted Plaintiff's obesity and her desire for bariatric surgery no less than four times in his ruling. At the hearing, the ALJ discussed at length with Plaintiff her obesity and the status of her other impairments. As such, contrary to Plaintiff's assertion, the ALJ did consider her obesity. Finally, as stated by Magistrate Judge Kemp, Plaintiff has not argued that there was any error in the way the ALJ articulated the basis of the decision to give less than controlling weight to Dr. Hayes' opinion.

Plaintiff next asserts that the ALJ did not properly evaluate obesity as a severe impairment. Upon consideration, Plaintiff's argument is without merit. *Mariarz v. Secretary of Health and Human Servs.*, 837 F.2d 240 (6th Cir. 1987) sets forth the required analysis an ALJ is required to perform once a severe impairment is found. Upon a determination that the claimant suffers from a severe impairment, the ALJ must determine if the claimant suffered from one of the"listed" impairments. *Id.* at 243, citing 20 CFR § 404.1525(a) and 20 CFR § pt. 404, subpt. P, app. 1. The inquiry ends and benefits are owed if it is found that claimant suffers from a "listed" impairment. *Id.* However, if the claimant does not, it must be determined whether he can return to his previously held job. *Id.* The claimant establishes a *prima facie* case of disability if he shows a "medical basis for an impairment that prevents him from engaging in his particular occupation." *Id.*, citing *Hepliner v. Matthews*, 574 F.2d 359, 361 (6th Cir. 1978). The burden then shifts to the Commissioner to demonstrate, based on certain factors, the claimant's ability to perform a different kind of job. *Mariarz*, 837 F.2d at 244.

Further, the *Mariarz* court held that upon a finding of one severe impairment, and the subsequent analysis with respect to it, it is not reversible error to fail to find that another condition constitutes a severe impairment. *Id.* In so holding, the *Mariarz* court reasoned that claimant's other medical conditions are considered in determining whether he is able to perform substantial gainful employment. *Id.*

Currently, while the ALJ did not conclude that Plaintiff's obesity was a severe impairment, other severe impairments were determined. As such, the ALJ engaged in the full disability analysis set forth above to determine whether the Plaintiff is able to perform substantial gainful employment. Therefore, and more importantly, in engaging in the

required disability analysis, the record reveals that the ALJ considered Plaintiff's obesity. As such, the ALJ's failure to conclude Plaintiff's obesity is a severe impairment does not constitute reversible error.

Plaintiff's final argument with respect to obesity is that S.S.R. 02-1p requires an express reference in analyzing obesity and other impairments. Plaintiff contends that *Rutter v. Comm'r. of Soc. Sec.*, Case No. 2:07-cv-118 (Doc. 13), holds that an ALJ's failure to include an analysis of the effects of the claimant's obesity on the other impairments was an error which required remanding.

In *Rutter*, the plaintiff suffered from a variety of aliments including sleep apnea, obesity, depression and carpal tunnel syndrome. The *Rutter* court concluded that the ALJ failed to assess the claimant's obesity in a manner contemplated by SSR 02-01p, 2000 WL 628046 (Sept. 12, 2002). Additionally, the *Rutter* court noted that there was a disproportionate emphasis on the claimant's need to lose weight.

This case stands in contrast to *Rutter.* Plaintiff testified at the hearing that her asthma, depression, hypertension and sleep apnea, impairments which are aggravated by obesity, were all under control with medication. Further, the record reveals that the ALJ took Plaintiff's obesity into account at each stage of the analysis. As such, Plaintiff's obesity received the attention contemplated by SSR 02-1p.

Finally, Plaintiff alleges that her weight of between 441-451 pounds and Body Mass Index of 78 necessitates a finding of severe impairment. The Court disagrees. It is a mischaracterization to suggest that S.S.R. 02-1p created any sort of procedural analysis of obesity claimants. *Webster v. Comm'r. of Soc. Sec.*, 2008 WL 207578 at *3 (W.D. Mich. 2008). S.S.R. 02-1p clearly states that there is no level of BMI or weight which requires

designation of severe impairment and, instead, advises that each case should be examined on an individualized basis. As previously stated, the ALJ considered Plaintiff's obesity in the analysis in accordance with S.S.R. 02-1p.

### 2. Treating Physician

Plaintiff's next objection pertains to the weight accorded to Dr. Hayes' opinion. While Plaintiff does not contend controlling weight should be given to Dr. Hayes, she does assert deference was to be accorded his opinion, and it was not.

Upon consideration, the Court does not find merit in this argument. Plaintiff is correct in her assertion that deference is generally given to treating physicians over non-treating physicians. *Rogers,* 486 F.3d at 242. However, deference must be based on objective medical evidence. *Id.* The Sixth Circuit holds that a brief, conclusory letter from a treating physician, when not supported by objective medical evidence, is not dispositive of the issue of disability. *Houston v. Sec. Health and Human Servs.* 736 F.2d 365, 367 (6th Cir. 1984).

The present case is analogous to *Houston.* Dr. Hayes' letter which states that due to Plaintiff's impairments, she has been "unable to find a job," lacks objective medical evidence, and, thus is not dispositive of the issue of disability. Moreover, there is nothing in the record to indicate that the ALJ failed to adhere to Dr. Hayes' opinion that Plaintiff's obesity caused chronic back pain. The opinion of Dr. Hayes and the decision of the ALJ are not mutually exclusive. The ALJ documents her weight immediately after discussing her back pain. Furthermore, the ALJ refers to Plaintiff's candidacy for bariatric surgery in the same paragraph as her lower back pain. As such, the Court does not concur with Plaintiff's position that Dr. Hayes' opinion was not accorded deference.

11

Additionally, Plaintiff contends that the non-examining physicians which reviewed her claim on December 17, 2003 and February 19, 2004, did not have Dr. Hayes' relevant records before them, including the records from which their opinions were given. Plaintiff alleges that the non-examining doctors could not fully appreciate the effect of Plaintiff's obesity on the other impairments without these records. Again, the Court does not agree. Plaintiff's highest documented weight occurred prior to the residual functional capacity assessment. The residual functional capacity assessment is substantial evidence that supports the Commissioner's decision.

### 3. Credibility

Plaintiff's final objection is that the ALJ improperly determined her credibility by mischaracterizing the scope of her activities. Plaintiff asserts that due to this improper determination the ALJ's credibility assessment is meaningless.

The ALJ must make clear the basis of credibility determinations. *Rogers*, 486 F.3d at 247. Blanket assertions of the claimant's credibility are not sufficient. *Id.* The Commissioner's opinion of plaintiff's credibility is to be given great weight and deference due to the interaction between the plaintiff and the Commissioner. *Walters v. Comm'r. of Soc. Sec.*, 127 F.3d 525, 531 (6th Cir. 1997).

Contrary to Plaintiff's assertion, the ALJ's decision was not a blanket assertion of her credibility. Instead, the Commissioner found Plaintiff to be a generally credible claimant but disagreed with her personal diagnosis that she could not work. As such, the ALJ did not disregard Plaintiffs testimony as to her symptoms, instead, the ALJ simply disagreed with Plaintiff's unsupported medical conclusion.

The ALJ considered Plaintiff's testimony. The ALJ discussed her weight, her taking Tylenol for back pain, her candidacy for bariatric surgery, and her need for use of a motorized cart when shopping. The ALJ discussed Plaintiff's improved sleep apnea, her medications, and her refusal to use the cane suggested by her treating physician. The ALJ found Plaintiff to be obese with severe impairments of sleep apnea, asthma, hypertension, and spinal disorders. The ALJ properly interpreted her symptoms, did not find them disabling, and appropriately decided that Plaintiff's residual functional capacity of performing less than a full range of sedentary work did not necessitate further narrowing.

Furthermore, the ALJ did not mischaracterize the scope of Plaintiff's daily activities. The ALJ discussed the limitations on some daily activities including Plaintiff's need for assistance with shoes and socks, her need of a railing in the shower, and her need to use a motorized cart while shopping. Plaintiff and the ALJ discussed at length the necessity of using a cane.

Accordingly, contrary to Plaintiff's argument, the ALJ did not improperly determine Plaintiff's credibility by mischaracterizing the scope of her activities.

### III. CONCLUSION

Upon consideration, the Court concludes that Plaintiff's Objections are without merit. Moreover, the Court finds substantial evidence to support the decision of the ALJ in denying disability benefits to Plaintiff. Therefore, the March 20, 2008 Objections of Plaintiff (Docs. 13) are hereby **DENIED** and the March 6, 2008 Report is hereby **ADOPTED**.

IT IS SO ORDERED.

_____
**MICHAEL H. WATSON, JUDGE
UNITED STATES DISTRICT COURT**